**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SCOTT DOLEMBA, on behalf of plaintiff and the classes defined below, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| RETAIL CAPITAL LLC, d/b/a CREDIBLY; WEBBANK; and DOES 1-10, | )<br>)<br>)<br>) |
| Defendants. | ) |

**COMPLAINT – CLASS ACTION**

**INTRODUCTION**

1.   Plaintiff Scott Dolemba brings this action to secure redress from unlawful telemarketing practices engaged in by defendants Retail Capital LLC d/b/a Credibly, Webbank, and Does 1-10. Plaintiff alleges violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") and the Illinois Consumer Fraud Act ("ICFA").

2.   The TCPA restricts the use of automated equipment to dial cellular telephones.

**VENUE AND JURISDICTION**

3.   This Court has jurisdiction under 28 U.S.C. §§1331 (federal question), 1337 (commerce), and 1367 (supplemental jurisdiction).

4.   Venue and personal jurisdiction in this District are proper because:

  a.   Defendants' communications were received by plaintiff in this District;

  b.   Defendants transact business within this District.

**PARTIES**

5.   Plaintiff Scott Dolemba is an individual who resides in the Northern District of Illinois.

6.   Defendant Retail Capital LLC is a limited liability company chartered under New

1

York law that does business as Credibly. Its headquarters is at 1250 Kirts Blvd., Suite 100, Troy, MI 48084-4737.

7.WebBank is a banking corporation chartered under Utah law with headquarters at 215 South State Street, Suite 1000, Salt Lake City, UT 84111.

8.Defendant Does 1-10 are other persons responsible for the calls detailed below.

## FACTS

9.Plaintiff received a series of telephone calls on his cell phone from "Credibly" – defendant Retail Capital LLC doing business as Credibly – offering financing to be provided by WebBank.

10.On the afternoon of October 29, 2016, plaintiff received three calls from a representative of Credibly. Plaintiff answered one, during which call a representative of Credibly who identified himself as "James" said he got plaintiff's name and number from a lead generator and offered financing to be provided by WebBank. (Exhibit A)

11.On November 1, 2016, at 2.56 p.m., plaintiff answered a call from a representative of Credibly who identified himself as "James." (Exhibit B) There was a noticeable pause and plaintiff said "hello" twice before "James" came on the line. "James" stated that Credibly was in the Detroit area.

12.Plaintiff may have received other automated calls from the same source.

13.According to the website of Retail Capital LLC, d/b/a Credibly, loans offered by the company are made by WebBank. (Exhibit C)

14.On information and belief, WebBank has authorized Retail Capital LLC, d/b/a Credibly to solicit loan business for it.

15.The following is a press release issued by Credibly on June 16, 2015:

> RetailCapital Re-Brands as Credibly; Inks Deal with Syndicate of Banks to Expand Funding Options with Loan Products
>
> Today, RetailCapital, an emerging financial technology small business lending platform, announced its re-brand as Credibly, along with the establishment of a credit facility with three participating banks – AloStar Bank of Commerce, WebBank and CapitalSource, a

2

division of Pacific Western Bank. This facilitates Credibly's launch of a Small Business Loan, enabling the company to further fulfill its mission: to provide a full range of lending solutions and capital to small and medium-sized businesses, regardless of where they are situated on the credit spectrum and business life cycle.

Through serving thousands of small and medium-sized businesses in the United States, the 88-person growth-stage company founded in 2010 has doubled in revenue and originations each year. In August 2014, to accelerate growth, the company received a significant equity commitment from Flexpoint Ford, the Chicago-based private equity investment firm with $1.5 billion under management.

"The RetailCapital brand, along with our financial partnerships, established the foundation of our company and facilitated our expansion during the first few years in business. As our operation continues to grow, so too does our vision and promise to our customers," said Glenn Goldman, CEO of Credibly. "Today is an incredibly exciting day for our company and our customers. As Credibly, we'll continue to be a partner to our customers, while providing access to additional funding options, through a simple and intuitive experience across all of our channels."

Along with the newly minted name, today Credibly has launched its new digital presence, credibly.com. Recognizing that many business owners are often on the go, the site is optimized for mobile devices. Additionally, the company released in.credibly.com, an education resource to help owners and operators grow and scale at every stage of their business.

As part of an expanding suite of lending products, the new Credibly Small Business Loan provides capital for businesses to grow, while delivering the flexibility and choice of daily, weekly or monthly payments. The Small Business Loan is the newest product available through Credibly, developed using the application of dynamic design to optimize for features such as amount, duration, drawdown frequency and payback frequency. These features are specifically designed with the growth objectives of Credibly's customers in mind, and their ability to lower their cost of capital over time.

The Small Business Loan is made by WebBank, a Utah-based industrial bank, who has partnered with Credibly, while the joint AloStar Bank of Commerce, WebBank and CapitalSource credit facility significantly increases the capacity for Credibly to lend to businesses throughout the United States. The on-balance sheet capacity complements the marketplace whole loan sale program.

"Most platforms offer one product aimed at a narrow slice of the market. At Credibly, we are taking a holistic view and believe that every business has the right to capital," continued Goldman. "The launch of the Small Business Loan serves as just the initial proof point demonstrating our dedication to delivering right-sized capital through a robust set of credit products for small businesses throughout their lifecycle. It's because of these bank relationships that we can say 'yes' more often to a wider variety of businesses so that new ideas and innovation can flourish in small business America."

16. The following is on Credibly's web site (https://www.credibly.com/about/):

Credibly is an emerging Fintech platform, leveraging Data Science and technology with an energetic focus on the customer experience. We created our unique lending and capital platform in order to serve small and medium-sized businesses as a trusted and committed

partner.

Since 2010, we've been working with businesses to help them secure financing and working capital solutions so they can thrive. But we don't just focus on funding—we also focus on the experience. The economic reality for banks is that they cannot focus on growth stage or smaller businesses, as it costs banks the same amount of time and resources to process a $50,000 loan as a $1,000,000 loan. Other companies are purely automated and it can be nearly impossible to speak to an actual person. We pay close attention to our customers to make sure they get the dedication and personalized service they deserve. Credibly is here to help.

Credibly was founded as RetailCapital in December 2010 by Ryan Rosett and Edan King, and began operating as a joint venture with Troy, Michigan-based Crestmark Bank in 2011. In 2013, the company released its first Scoring Model, which evaluates a business's overall health, beyond traditional metrics like credit score.

2014 was a breakout year for RetailCapital, as it was named the 35th fastest-growing privately owned business on the prestigious Inc. 500 list. In August 2014, the company secured a strategic equity investment from Flexpoint Ford to accelerate its growth and trajectory, and former CAN Capital CEO Glenn Goldman joined as its new CEO. Other positive changes followed: RetailCapital opened its New York City offices, expanded its data science, risk analytics, technology, and marketing departments, and acquired 100% ownership of its joint venture structure from Crestmark Bank.

In June 2015, RetailCapital officially re-branded as Credibly, to reflect a growing small business customer base that extended well beyond the retail industry. Credibly entered into an agreement with WebBank to facilitate the launch of its Small Business Loan product, entered into its first large bank facility with Alostar Bank of Commerce and CapitalSource, and released version 2.0 of its game-changing Scoring Model.

In August 2015, Credibly made the Inc. 500 list for the second year in a row, at #306—an accomplishment that speaks to the company's continued growth as a leader in the alternative funding space.

17. On information and belief, the calls to plaintiff were placed using a predictive dialer. Predictive dialers place calls without human intervention until a connection is made. The machine "predicts" when a human is likely to be available to take the call if answered.

18. Because a human is not instantly available to take the call if answered, there is often a noticeable pause between the time the called person answers a call placed using a predictive dialer and the time a representative of the caller gets on the line, such as was experienced by plaintiff.

19. Plaintiff did not authorize the automated placement of calls to his cell phone.

20. Plaintiff did not furnish his cell phone number to defendants.

4

21. Plaintiff was damaged by the calls, in that they consumed time, energy, memory and battery life.

22. Plaintiff and each class member is entitled to statutory damages.

23. Defendants violated the TCPA even if their actions were only negligent.

24. Defendants should be enjoined from committing similar violations in the future.

### COUNT I – TCPA

25. Plaintiff incorporates paragraphs 1-24.

26. The TCPA, 47 U.S.C. §227, provides:

> **§ 227. Restrictions on use of telephone equipment**
>
> **. . . (b) Restrictions on use of automated telephone equipment.**
>
> **(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–**
>
> > **(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–**
> >
> > > **(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

27. The TCPA, 47 U.S.C. §227(b)(3), further provides:

> **Private right of action.**
>
> **A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**
>
> > **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
> >
> > **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
> >
> > **(C) both such actions.**
>
> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court**

> **may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

28. Defendants violated the TCPA by placing automated calls to plaintiff's phone.

## CLASS ALLEGATIONS

29. Plaintiff brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), and on or before a date 20 days following the filing of this action, (c) received calls from Credibly on their cell phones, (d) placed using an automated dialer or a prerecorded or artificial voice.

30. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

31. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether defendants engaged in a pattern of using automated equipment to place calls to cellular telephones;

    b. The manner in which defendants obtained the cell phone numbers; and

    c. Whether defendants thereby violated the TCPA.

32. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel has any interests which might cause them not to vigorously pursue this action.

33. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

34. Several courts have certified class actions under the TCPA: *Meyer v. Portfolio*

*Recovery Associates, LLC,* 707 F.3d 1036 (9th Cir. 2012); *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674 (S.D.Fla. 2013); *Mitchem v Illinois Collection Serv*., 271 F.R.D. 617 (N.D.Ill. 2011); *Balbarin v. North Star Capital Acquisition, LLC,*, 10 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill., Jan. 5, 2011), later opinion, 2011 U.S. Dist. LEXIS 5763 (N.D.Ill., Jan. 21, 2011), later opinion, 2011 U.S. Dist. LEXIS 58761 (N.D. Ill., June 1, 2011); *Lo v. Oxnard European Motors, LLC*, 11CV1009 JLS (MDD), 2012 U.S. Dist. LEXIS 73983 (S.D.Cal., May 29, 2012); *Sadowski v. Med1 Online, LLC,* 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *CE Design Ltd. v Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Sys. v Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Lab, Inc.,* 10 C 1315, 2010 U.S. Dist. LEXIS 108339, 2010 WL 4074379 (N.D.Ill., Oct. 12, 2010); *Hinman v. M & M Rental Ctr.,* 545 F.Supp. 2d 802 (N.D.Ill. 2008); *Clearbrook v. Rooflifters, LLC*, 08 C 3276, 2010 U.S. Dist. LEXIS 72902 (N.D. Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communs., Inc*., 08 C 4521, 2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010); *Holtzman v. Turza*, 08 C 2014, 2009 U.S. Dist. LEXIS 95620 (N.D.Ill., Oct. 14, 2009); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc*., 992 So. 2d 510 (La. App. 1st Cir. 2008); *Lampkin v. GGH, Inc*., 146 P.3d 847 (Ok. App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285; 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns. Inc.,* 306 S.W.3d 577 (Mo. App. 2010); *Travel 100 Group, Inc. v. Empire Cooler Service, Inc.*, 03 CH 14510 (Cook Co. Cir. Ct., Oct. 19, 2004); *Rawson v. C.P. Partners LLC*, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); *Nicholson v. Hooters of Augusta, Inc.*, 245 Ga.App. 363, 537 S.E.2d 468 (2000).

    35.    Management of this class action is likely to present significantly fewer difficulties

than those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    (a)    Statutory damages;

    (b)    An injunction against the further violations;

    (c)    Costs of suit; and

    (d)    Such other or further relief as the Court deems just and proper.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

36. Plaintiff incorporates paragraphs 1-24.

37. Defendants engaged in unfair acts and practices, in violation of ICFA §2, 815 ILCS 505/2, by making unauthorized robocalls to plaintiff's cell phone.

38. Defendant's conduct is contrary to public policy, as set forth in the TCPA.

39. Defendant engaged in such conduct in the course of trade and commerce.

40. Defendant should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

41. Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with telephone numbers in the Illinois area codes (b) who, on or after a date three years prior to the filing of this action, and on or before a date 20 days following the filing of this action, (c) received calls from "Credibly" on their cell phones, (d) placed using an automated dialer or a prerecorded or artificial voice.

42. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

43. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a.    Whether defendants engaged in a pattern of using automated equipment to

      place calls to cellular telephones;

    b.  The manner in which defendants compiled or obtained their list of telephone numbers; and

    c.  Whether defendants thereby violated the ICFA.

  44.  Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel has any interests which might cause them not to vigorously pursue this action.

  45.  Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

  46.  A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

  47.  Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

  WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    (a)  Statutory damages;

    (b)  An injunction against further violations;

    (c)  Costs of suit;

    (d)  Such other or further relief as the Court deems just and proper.

          s/ Daniel A. Edelman
          Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Julie Clark
Heather Kolbus
EDELMAN, COMBS, LATTURNER
& GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX) (may use for service of pleadings)
Email address for service: courtecl@edcombs.com

T:\33371\Pleading\Complaint_Pleading.wpd

10

## **VERIFICATION**

      The undersigned declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the facts stated in the foregoing complaint are true to the best of the undersigned's knowledge and belief.

*/s/ Scott Dolemba*
Scott Dolemba

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                            s/ Daniel A. Edelman
                                            Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
& GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX) (may use for service of pleadings)
Email address for service: courtecl@edcombs.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

s/ Daniel A. Edelman
Daniel A. Edelman